UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BAI LIN HUANG,

                      Plaintiff,

     -v-

AMAZON.COM, INC. and JP MORGAN CHASE,

                      Defendants.

CIVIL ACTION NO.: 22 Civ. 3527 (JLR) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE JENNIFER L. ROCHON**, United States District Judge:

## I. INTRODUCTION

Pro se Plaintiff Bai Lin Huang ("Ms. Huang") brings this action against defendants Amazon.com, Inc. ("Amazon") and JP Morgan Chase ("Chase," with Amazon, "Defendants"), asserting claims for racial discrimination under 42 U.S.C. § 1981 ("Section 1981") and for intentional infliction of emotional distress ("IIED") under New York law. (ECF No. 1 (the "Complaint")). Ms. Huang's claims arise out of the allegedly wrongful closure of her Amazon customer and seller accounts and the termination of her Amazon-Chase credit card. (Id.)

Defendants have each moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim. (ECF Nos. 16 ("Chase's Motion"); 26 ("Amazon's Motion," with Chase's Motion, the "Motions")). Ms. Huang has opposed the Motions and requested leave to amend (the "Request"). (ECF Nos. 19; 21; 33; 34).

For the reasons set forth below, I respectfully recommend that the Motions be GRANTED, the Request be GRANTED IN PART and DENIED IN PART, and that Ms. Huang be granted leave to amend only certain of her claims.

## II.BACKGROUND

### A. Factual Background

The Court summarizes the following facts from the Complaint, and presumes them to be true for purposes of deciding the Motions.  See Rosen v. N.Y.C. Dep't of Educ., No. 18 Civ. 6670 (AT), 2019 WL 4039958, at *2 (S.D.N.Y. Aug. 27, 2019).[1]  In addition, because Ms. Huang is a pro se litigant, the Court also considers allegations in her oppositions to the Motions to the extent "they are consistent with the facts [s]he alleges in the Complaint."  Evans v. City of New York, No. 21 Civ. 8660 (JPC), 2022 WL 1172740, at *1 n.1 (S.D.N.Y. Apr. 20, 2022); see Henning v. N.Y.C. Dep't of Corr., No. 14 Civ. 9798, 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016) (crediting pro se plaintiff's allegation that "appear[ed] in his opposition papers . . . in evaluating the sufficiency of his complaint"); White v. Schriro, No. 14 Civ. 3204 (AT) (FM), 2015 WL 4470168, at *1 (S.D.N.Y. July 15, 2015) ("For the purposes of deciding this motion, the Court accepts as true all facts in Plaintiff's complaint and opposition papers."); Flores v. N.Y.C. Human Res. Admin., No. 10 Civ. 2407, 2011 WL 3611340, at *1 n. 1 (S.D.N.Y. Aug. 16, 2011) ("Because of [plaintiff's] pro se status, . . . the Court may consider factual allegations [plaintiff] makes in her opposition papers, in addition to the allegations in the complaint [.]"); Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 (S.D.N.Y. Jan. 26, 1999) ("In general, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.").

Ms. Huang is "an Asian-American Muslim female" who resides in New York.  (ECF No. 1

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted from case citations.

at 6 ¶ 32; <u>see</u> <u>id.</u> at 1 ¶ 1).[2]  Amazon is a Seattle-based online "retail advertising, sales[,] and product distributi[on]" business.  (<u>Id.</u> at 4 ¶ 10).  Chase is a "Retail Financial Services" business based in New York.  (<u>Id.</u> at 4 ¶ 11).

In 2016, Ms. Huang applied to open a business account with Amazon "to sell [her] own designed jewelry" and other handmade products (the "Seller Account").  (ECF No. 21 at 2 ¶ 11; <u>see</u> ECF No. 1 at 2 ¶ 1).  At that time, Ms. Huang had operated a retail customer account with Amazon (the "Retail Account") for over ten years "without incident." (ECF No. 1 at 2 ¶ 1).  Amazon approved the application and opened the Seller Account.   (<u>Id.</u>; <u>see</u> ECF No. 21 at 2 ¶ 13).  Ms. Huang's husband, Erdal Kuyumcu ("Kuyumcu"), a "Turkish-American Muslim," was "not a partner, signee[,] or member" of Ms. Huang's Seller or Retail Accounts.  (ECF Nos. 1 at 4 ¶ 13; 21 at 3 ¶ 19).  In 2017, Kuyumcu was convicted in the United States of "exporting materials to Turkey [that were] rerouted to Iran" in violation of federal law.  (ECF No. 1 at 4 ¶ 15).  Ms. Huang was never "accused of violating any laws of the United States, or of having a role in any of [Kuyumcu's] acts[.]"  (<u>Id.</u>)

In 2018, Amazon "offered [Ms. Huang] an Amazon Credit Card [the 'Credit Card'] due to her outstanding Credit score and her business relationship with" Amazon.  (ECF No. 1 at 2 ¶ 1).  Ms. Huang alleges that the "Credit Card was a joint venture" between Amazon and Chase.  (<u>Id.</u>)  Ms. Huang applied for the Credit Card, and her "application was approved in the beginning of April 2018."  (<u>Id.</u>)

In both the Complaint and a sworn affidavit filed with it (ECF No. 1 at 1 (the "Affidavit")), Ms. Huang states that Amazon and Chase "notified [her in] mid [] April 2018 (15 days after they

---

[2] Citations to page numbers of the parties' filings refer to the ECF-assigned pagination.

had approved [her]), that [her Credit Card] account was being closed and their business relations with [her] were being terminated" (the "April 2018 Closure").  (ECF No. 1 at 1 ¶ 5; see id. at 4 ¶ 16 ("In April[] 2018, [Ms. Huang] was informed by [] Chase via [Amazon] that her [Credit Card] account was being terminated[.]")).  Ms. Huang "subsequently learned that Chase's actions were [] based upon [the] alleged independent conduct of" Kuyumcu.  (ECF No. 1 at 1 ¶ 5; see id. at 4 ¶ 16 (alleging that Chase "indicated that [the April 2018 Closure] was a result of her spouse's conviction.").  According to Ms. Huang, "Chase knew that [] Kuyumcu is [her] husband because . . . [he] had a Business Account with [] Chase [that] was closed during his legal process." (ECF No. 21 at 3 ¶ 20).

On December 28, 2018, Amazon informed Ms. Huang that it was closing her Retail and Seller Accounts pursuant to its "policy to comply with government sanctions and export regulations" (the "Dec. 2018 Closure," with the April 2018 Closure, the "Closures"). (ECF No. 1 at 2 ¶ 1; see id. at 10 (the "Email")).  Amazon advised Ms. Huang that it had "identified similarities between information in [her] account and an individual with whom [Amazon] can't currently due business."  (ECF No. 1 at 10).  Ms. Huang appealed the Dec. 2018 Closure, but, on January 2, 2019, Amazon affirmed the Dec. 2018 Closure.  (ECF No. 1 at 8; see id. at 1 ¶ 4).

Ms. Huang alleges that the Closures resulted from Defendants' "arbitrary, discriminatory racial targeting of non-Caucasians[,]" and that she "is being unlawfully alienated, burdened, discriminated against, penalized and stigmatized for nothing other than being an Asian-American Muslim."  (ECF No. 1 at 5 ¶¶ 19, 23).  Ms. Huang asserts "[u]pon information and belief" that Defendants "routinely engage in a pattern and practice of discriminating against non-Caucasians, who have not themselves[] committed any criminal offenses just because of their religious

and/or ethnic affiliation to an individual."  (Id. at 5 ¶ 20).  She alleges that, "following September

11th, 2001, [she] has learned of several instances where Muslims[] and non-Caucasians have

routinely been subjected to racial animus, and deprived of their Civil Rights by Defendants [] in

violation of 42 U.S.C. [§] 1981, by unlawfully placing them in a suspect category."  (Id. at 5 ¶ 21).

Finally, Ms. Huang alleges that Defendants' "selective targeting of [her] for disparate and

discriminatory treatment is based wholly on [her] religious affiliation and race, since it is similarly

well known that Irish, Italian and Jewish customers having accounts with these Defendants are

not denied service simply because a family member was convicted of a criminal offense."

(Id. at 5 ¶ 22).

### B.  **Procedural History**

On May 2, 2022, Ms. Huang filed the Complaint.  (ECF No. 1).  She asserts Section 1981

claims (the "Section 1981 Claims") and IIED claims (the "IIED Claims") against each Defendant

based on the Closures, alleging that "Defendants acted out of racial animus" and "with reckless

indifference to the likelihood that emotional distress would result[.]"  (Id. at 5–6 ¶¶ 24–32).

#### 1.  **Chase's Motion**

On August 8, 2022, Chase filed its Motion.  (ECF No. 16).  Chase, whose alleged

involvement in this case is limited to the April 2018 Closure, argues that both of Ms. Huang's

claims are barred by the applicable statutes of limitations and, in any event, should be dismissed

for failure to state a claim.  (ECF No. 17 at 7–15).

On August 29, 2022, Ms. Huang opposed Chase's Motion (the "First Opposition").

(ECF Nos. 19; 21).  In response to Chase's argument that her Section 1981 Claim is barred by the

four-year statute of limitations, Ms. Huang asserts several new allegations that directly contradict

her statements in the Complaint and the Affidavit.  Specifically, contrary to her allegation in the Complaint that Amazon and Chase informed her of the April 2018 Closure in April 2018 (see ECF No. 1 at 1 ¶ 5; see id. at 4 ¶ 16), Ms. Huang now contends that she first learned of it on May 14, 2018 "by way of a credit report" from www.creditkarma.com (the "Credit Report"). (ECF No. 19 at 6).  Ms. Huang also now claims that she "never received a notice (mail or email) from Chase or from Amazon that they ha[d] closed [her] Credit Card."  (ECF No. 21 at 3 ¶ 18). Ms. Huang asserts that the Credit Report, which reflects that she made a payment for the Credit Card on May 2, 2018, "demonstrates that [she] was unaware that her account with [D]efendants was closed on April 30, 2018."  (ECF Nos. 19 at 5–6; 19-2 at 2–4).

On September 12, 2022, Chase filed a reply.  (ECF No. 29).  Chase argues, inter alia, that Ms. Huang "should not be permitted to amend the Complaint to include new allegations of when she discovered additional facts relating to her Section 1981 claim because the date of her discovery of the account closure as alleged in her opposition directly contradicts her sworn [A]ffidavit filed with the Complaint."  (Id. at 5–6).

### 2. Amazon's Motion

On September 7, 2022, Amazon filed its Motion.  (ECF No. 26).  Amazon makes the same arguments as Chase, i.e., that Ms. Huang's claims based on the April 2018 Closure are time-barred and, in any event, should be dismissed for failure to state a claim.  (ECF No. 27 at 9–14).  Amazon also addresses Ms. Huang's claims based on the Dec. 2018 Closure.  (Id.)  While conceding that Ms. Huang's Section 1981 Claim based on the Dec. 2018 Closure is timely (see id. at 9 n.3), Amazon argues that her IIED Claim based on these allegations is untimely, and, in any event, both claims should still be dismissed for failure to state a claim.  (Id. at 9–14).

Pursuant to the Court's Local Rules, Ms. Huang's opposition to Amazon's Motion was due by September 21, 2022, but she failed to file an opposition by this date. <u>See</u> S.D.N.Y. Loc. R. 6.1(b). On September 28, 2022, Amazon filed a reply to the First Opposition. (ECF No. 32).

On October 2, 2022, Ms. Huang filed an opposition to Amazon's Motion (the "Second Opposition," with the First Opposition, the "Oppositions"). (ECF Nos. 33; 34). Ms. Huang's arguments in the Second Opposition largely mirror those in the First Opposition. (<u>Compare</u> ECF Nos. 19 and 21 <u>with</u> ECF Nos. 33 and 34). Ms. Huang adds, however, that Amazon's Motion was "surprising[,]" and that Amazon's counsel had misled her. (ECF No. 33 at 6; <u>see</u> ECF No. 34 at 6–7 ¶ 20–28). Ms. Huang claims that Amazon's counsel had informed her that she was bound by an agreement to arbitrate her claims. (ECF No. 34 at 6 ¶ 20). In response to this information, Ms. Huang agreed to withdraw this lawsuit and proceed to arbitration "if Amazon would cover this cost[.]" (<u>Id.</u> at 7 ¶ 25). Ms. Huang claims that Amazon's counsel agreed to consider her request and asked for her consent to an extension of Amazon's deadline to respond to the Complaint, which Ms. Huang provided. (<u>Id.</u> at 7 ¶ 26; <u>see</u> ECF No. 14). Ms. Huang claims that Amazon never responded to her request regarding the arbitration costs and, instead, filed its Motion. (ECF No. 34 at 7 ¶ 27). In the Second Opposition, Ms. Huang also argues, based on the Credit Report, that she is entitled to "equitable tolling" of the limitations period for the Section 1981 Claim. (ECF No. 33 at 8).

On October 4, 2022, the Court accepted the Second Opposition, and granted Amazon leave to file a further reply (the "Supplemental Reply"). (ECF No. 36). On October 10, 2022, Amazon filed the Supplemental Reply, arguing, <u>inter alia</u>, that "after (i) Mrs. Ms. Huang declined to voluntarily proceed to arbitration unless Amazon satisfied certain of her additional demands

and (ii) she raised claims regarding her customer account, which did not require arbitration, Amazon elected to move to dismiss, as it is permitted to do." (ECF No. 39 at 3). Amazon also argues that Ms. Huang fails to "identify any valid basis for [equitable] tolling." (Id. at 2).

### III. DISCUSSION

#### A.  Legal Standards for Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Ent., 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"In applying this standard, a court accepts as true all well-pled factual allegations but does not credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'" Gottesfeld v. Anderson, No. 18 Civ. 10836 (PGG), 2020 WL 1082590, at *4 (S.D.N.Y. Mar. 6, 2020) (quoting Iqbal, 556 U.S. at 678). The Court shall not give "effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007). "Where a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not 'nudged [plaintiff's] claims across the line from conceivable to plausible' – dismissal is appropriate." Gottesfeld, 2020 WL 1082590, at *4 (quoting Twombly, 550 U.S. at 570).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.'" DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). For a document to be integral to the complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[] in framing the complaint.'" DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

In deciding a motion to dismiss, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). Despite that consideration, "a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face." Gottesfeld, 2020 WL 1082590, at *5. Despite the Court's obligation "to draw the most favorable inferences" from a complaint, it "cannot invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

"A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in [her] papers opposing the motion." Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013). Where, however, "a 'plaintiff blatantly changes [her] statement of the facts in order to respond to the defendants' motion to dismiss . . . [and] directly contradicts the facts set forth

in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" Colliton v. Cravath, Swaine & Moore LLP, No. 08 Civ. 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), aff'd, 356 F. App'x 535 (2d Cir. 2009) (quoting Wallace v. N.Y.C. Dep't of Corr., No. 95 Civ. 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)); cf. Wheeler v. Slanovec, No. 16 Civ. 9065 (KMK), 2019 WL 2994193, at *6 (S.D.N.Y. July 9, 2019) ("In cases where allegations in an amended pleading directly contradict pleadings in the original complaint, courts have disregarded the amended pleading."); Kilkenny v. Law Office of Cushner & Garvey, L.L.P., No. 08 Civ. 588 (KMK), 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) ("There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings.").  This is true "[e]ven for pro se plaintiffs[.]" Dos Santos v. Assurant, Inc., No. 21 Civ. 6368 (PAE) (RWL), 2022 WL 3974594, at *7 (S.D.N.Y. Sept. 1, 2022); see Colliton, 2008 WL 4386764, at *6; Wallace, 1996 WL 586797, at *2).

**B. Timeliness of Section 1981 Claims Based on April 2018 Closure and IIED Claims**

Defendants argue that, because Ms. Huang did not file the Complaint until May 2, 2022, the Section 1981 Claims based on the April 2018 Closure—which, according to Ms. Huang's allegations in the Complaint, Amazon and Chase informed her of in April 2018—are barred by the four-year statute of limitations, and her IIED Claims are barred by the one-year statute of limitations.  (ECF Nos. 17 at 7–8, 12–13; 27 at 9, 12–13).  In her First Opposition, Ms. Huang argues that her Section 1981 Claims based on the April 2018 Closure are not barred because, contrary to her own statements in the Complaint, she first learned on the April 2018 Closure on May 14,

2018.  (ECF No. 19 at 6).  In her Second Opposition, Ms. Huang argues that she is entitled to equitable tolling of the limitations period for the Section 1981 Claim.  (ECF No. 33 at 8).

For the reasons set forth below, the Court agrees with Defendants and finds that Ms. Huang's Section 1981 Claims based on the April 2018 Closure and her IIED Claims are time-barred.

### 1. Legal Standards

#### a. Applicable statutes of limitations

"Claims arising under § 1981 are generally governed by a four-year statute of limitations, see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004), although certain § 1981 claims in New York have a three-year limitations period, see Wright v. City of Ithaca, 633 F. App'x 63, 64 (2d Cir. 2016)."  Toussaint v. City of New York, No. 19 Civ. 1239 (AT), 2020 WL 3978317, at *3 (S.D.N.Y. June 29, 2020), reconsideration denied, 2020 WL 3975472 (S.D.N.Y. July 14, 2020).  Defendants presume that the four-year limitations period applies to Ms. Huang's Section 1981 Claims.  (See ECF Nos. 17 at 8; 27 at 9).  "A § 1981 claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action."  Seck v. Info. Mgmt. Network, No. 15 Civ. 7354 (LAP), 2015 WL 13662180, at *4 (S.D.N.Y. Dec. 7, 2015), aff'd, 697 F. App'x 33 (2d Cir. 2017).

Under New York law, IIED claims are "subject to a one-year statute of limitations." Truman v. Brown, 434 F. Supp. 3d 100, 117–18 (S.D.N.Y. 2020) (citing Gallagher v. Dirs. Guild of Am., 533 N.Y.S.2d 863, 864–65 (1st Dep't 1988)); see N.Y. C.P.L.R. § 215(3).  "'A cause of action alleging intentional infliction of emotional distress accrues on the date of injury.'"  Karupaiyan v. Experis IT, No. 21 Civ. 4675 (LGS), 2022 WL 4280529, at *4 (S.D.N.Y. Sept. 15, 2022) (quoting Wilson v. Erra, 94 A.D.3d 756 (2d Dep't 2012)).

**b.  Equitable tolling**

"The doctrine of equitable tolling permits a court, 'under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order to prevent inequity.'"  Mira v. Kingston, 218 F. Supp. 3d 229, 236 (S.D.N.Y. 2016) (quoting In re U.S. Lines, Inc., 318 F.3d 432, 436 (2d Cir. 2003)).  "Federal courts have typically extended equitable relief only sparingly." Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990).  "[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights."  Zerilli–Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir.2003).

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Zerilli–Edelglass, 333 F.3d at 80–81 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).  "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."  Harper v. Ercole, 648 F.3d 132, 136 (2d Cir. 2011).  "One example of an 'extraordinary circumstance' meriting equitable tolling may be where plaintiffs can show that it would have been impossible for a reasonably prudent person to learn or discover critical facts underlying their claim."  Bodner v. Banque Paribas, 114 F. Supp. 2d 117, 135 (E.D.N.Y. 2000).  This standard also "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time

notwithstanding the extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir.2000). "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." Boos v. Runyon, 201 F.3d 178, 185 (2d Cir.2000). "Pro se filings, although held to more lenient standards, are not excused from establishing these elements." Victorial v. Burge, 477 F.Supp.2d 652, 654 (S.D.N.Y.2007).

### 2. **Application**

Ms. Huang filed the Complaint on May 2, 2022. (ECF No. 1). Accordingly, to be timely, her Section 1981 Claims must have accrued on or after May 2, 2018, and her IIED Claims must have accrued on or after May 2, 2021.

Initially, Ms. Huang does not respond to, much less refute, Defendants' arguments that her IIED claims, whether based on the April 2018 Closure or the December 2018 Closure, are barred by the one-year statute of limitations. A cursory review of the Complaint demonstrates that Defendants are correct, because the latest allegedly injurious act occurred in December 2018, more than three years before Ms. Huang filed the Complaint. (See ECF No. 1 at 4 ¶ 16).[3] Accordingly, because they are not based on any injury that occurred within one year of filing the Complaint, Ms. Huang's IIED Claims are time-barred. See Karupaiyan, 2022 WL 4280529; N.Y. C.P.L.R. § 215(3).

Ms. Huang's Section 1981 Claims based on the April 2018 Closure are also time-barred. In her Complaint and Affidavit, Ms. Huang states that Amazon and Chase informed her of the

---

[3] In the Affidavit, Ms. Huang states that "on the 28th day of December 2021, [she] received an . . . email from Amazon informing [her]" of the December 2018 Closures. (ECF No. 1 at 1 ¶ 4 (emphasis added)). The Court presumes this is a typographical error, however, because the Email annexed to the Complaint is dated December 28, 2018. (ECF No. 1 at 10; see id. at 4 ¶ 18 (alleging that, "in December 2018, [Ms. Huang] was informed by [Amazon] that her account . . . was being closed/terminated" (emphasis added)).

April 2018 Closure in April 2018.  (See ECF No. 1 at 1 ¶ 5 (stating that Amazon and Chase "notified [her in] mid [] April 2018 (15 days after they had approved [her]), that [her Credit Card] account was being closed and their business relations with [her] were being terminated"); id. at 4 ¶ 16 ("In April[] 2018, [Ms. Huang] was informed by [] Chase via [Amazon] that her account was being terminated[.]").  Thus, Ms. Huang had four years, until April 2022, to file her Section 1981 Claims based on the April 2018 Closure.  Because she did not file the Complaint until May 2, 2022, her Section 1981 Claims based on the April 2018 Closure are untimely.  See Sherman v. Yonkers Pub. Sch., No. 21 Civ. 7317 (CS), 2023 WL 137775, at *4 (S.D.N.Y. Jan. 9, 2023) ("[A]ny discrete acts of discrimination . . . under § 1981 that are alleged to have occurred prior to [four years before the date the complaint was filed] . . . are time barred.").

Ms. Huang's attempt to salvage her untimely Section 1981 Claims by changing her allegations in response to the Motions is unavailing.  As discussed above, Ms. Huang's statements in the Affidavit and Complaint are unambiguous that Amazon and Chase informed her of the April 2018 Closure in April 2018.  (See ECF No. 1 at 1 ¶ 5; id. at 4 ¶ 16).  Her new assertion in the First Opposition that Amazon and Chase never informed her of the April 2018 Closure, and that she learned of it only through the Credit Report on May 14, 2018, directly contradict her prior allegations, and represent a transparent attempt to avoid the statute of limitations bar.  In these circumstances, the Court "is authorized to accept the facts described in the original complaint as true[,]" which demonstrate that her Section 1981 Claims based on the April 2018 Closure are untimely.  Colliton, 2008 WL 4386764, at *6; see Dos Santos, 2022 WL 3974594, at *7 (disregarding a pro se plaintiff's "contradictory" allegation in response to a motion to dismiss untimely claims); Wallace, 1996 WL 586797, at *2 (dismissing pro se amended complaint based

on facts "set forth in his original complaint" where "[t]he plaintiff blatantly change[d] his statement of the facts in order to respond to the defendants' motion to dismiss").

Ms. Huang's invocation of the equitable tolling doctrine is equally unavailing.  As Defendants demonstrate, Ms. Huang "does not identify any valid basis for tolling."  (ECF No. 39 at 2; see ECF No. 29 at 6–7).  She has not identified any exceptional circumstances that prevented her from exercising her rights, much less established that she acted with reasonable diligence during the limitations period despite such circumstances.  Zerilli–Edelglass, 333 F.3d at 80–81. According to Ms. Huang, she learned of the Closures when they occurred, i.e., in April 2018 and December 2018, respectively.  (ECF No. 1 at 4 ¶¶ 16, 18).  Even considering her contradictory allegations in the First Opposition, Ms. Huang learned of the April 2018 Closure in May 2018, at the latest.  (ECF No. 19 at 6).  Despite this knowledge, however, Ms. Huang inexplicably waited until May 2022 to file the Complaint.  She has offered no explanation for her delay and, as a result, has failed to establish that this case presents the type of "rare and exceptional circumstances" that would justify equitable tolling.  Zerilli–Edelglass, 333 F.3d at 80.

*       *       *

Accordingly, I respectfully recommend that Ms. Huang's Section 1981 Claims based on the April 2018 Closure and her IIED Claims be DISMISSED as time-barred.  Because these claims constitute all claims asserted against Chase, the Court recommends that Chase's Motion be GRANTED in its entirety and the claims against Chase be DISMISSED WITH PREJUDICE.

C. **Plausibility of Section 1981 and IIED Claims**

Defendants argue that, regardless of their timeliness, all of Ms. Huang's Section 1981 and IIED Claims should be dismissed for failure to state a claim.  (ECF Nos. 17 at 8–12, 14–15; 27 at

9–14).   The Court addresses each claim.   In the event the District Court disagrees with the conclusion that Ms. Huang's Section 1981 Claims based on the April 2018 Closure and her IIED Claims are untimely, I will address the plausibility of these claims as well.

### 1. Section 1981 Claims

Ms. Huang claims that "Defendants acted out of racial animus in denying [Ms. Huang] her federally protected rights and intentionally treated her in a base, criminal and subhuman manner, when cancelling her accounts and business relationships[,]" in violation of Section 1981. (ECF No. 1 at 5 ¶ 26).   Defendants argue that Ms. Huang's Section 1981 Claims fail because they are not supported by plausible allegations of Defendants' discriminatory intent.   (ECF Nos. 17 at 9–12; 27 at 11–12).   In her Oppositions, Ms. Huang argues, inter alia, that, "[w]ithout any discovery having been had at this initial stage[,] dismissal would be inappropriate[.]"   (ECF No. 19 at 7; see ECF No. 33 at 7 (arguing that dismissal of her Complaint before she has the "opportunity to conduct some degree of discovery into the serious nature of [D]efendants having a pattern and practice of engaging in similar discriminatory conduct would undermine the interest of justice").

For the reasons set forth below, the Court agrees with Defendants and finds that Ms. Huang has failed to state a plausible Section 1981 Claim.

### a. Legal standards

Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and extractions of every kind, and to no other.

42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "The rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination[.]" Id. at § 1981(c). "Section 1981 does not prohibit discrimination on the basis of gender[,] religion, national origin, or age[.]" Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998); see Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) (holding that § 1981 does not prohibit alleged discrimination as to religious expression); Williams v. Victoria's Secret, No. 15 Civ. 4715 (PGG) (JLC), 2017 WL 1162908, at *9 (S.D.N.Y. Mar. 28, 2017) (dismissing § 1981 claim based on alleged age discrimination).

To plead a Section 1981 claim, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

"To survive a motion to dismiss, a [Section 1981] plaintiff must specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'" Bentley, Jr. v. Mobil Gas Station, 599 F. App'x 395, 396 (2d Cir. 2015) (quoting Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir.1994)). "Direct evidence of discriminatory intent is not required to satisfy the second element of a section 1981 claim, as a plaintiff may instead rely on circumstantial evidence that supports an inference of discrimination." Oparaji v. ABN AMRO Mortg. Grp., Inc., No. 19-CV-1650 (MKB), 2020 WL 9816011, at *14 (E.D.N.Y. Sept. 18, 2020) (citing Lizardo v. Denny's, Inc.,

270 F.3d 94, 104 (2d Cir. 2001)).

"An inference of discrimination may be drawn where 'similarly situated' patrons who are not members of the relevant protected class are treated differently than the plaintiffs who allege discrimination under section 1981." Oparaji, 2020 WL 9816011, at *14 (citing Lizardo, 270 F.3d at 101). A plaintiff relying of alleged disparate treatment, however, "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Johnson v. Andy Frain Servs., Inc., 638 F. App'x 68, 70 (2d Cir. 2016).

"A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss." Bentley, Jr., 599 F. App'x at 396 (citing Albert v. Carovano, 851 F.2d 561, 572 (2d Cir.1988)). "Finally, 'a complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination.'" Akyar v. TD Bank US Holding Co., No. 18 Civ. 379 (VSB), 2018 WL 4356734, at *3 (S.D.N.Y. Sept. 12, 2018) (quoting Hicks v. IBM, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999)).

### b. **Application**

Ms. Huang's Section 1981 Claims fail as a matter of law because she has not plausibly alleged that Defendants intentionally discriminated against her based on her race. As an initial matter, Ms. Huang's claims that Defendants discriminated against her based on her "religious affiliation" or "because a family member was convicted of a criminal offense" (ECF No. 1 at 5 ¶ 22), do not support her claims because "Section 1981 . . . prohibits only racial or ethnic discrimination." Hill v. City of New York, 136 F. Supp. 3d 304, 329 (E.D.N.Y. 2015) (citing Anderson, 156 F.3d at 170 (2d Cir.1998) (noting that Section 1981's "prohibition against racial

discrimination encompasses discrimination based on ancestry or ethnic characteristics" but "does not prohibit discrimination on the basis of gender or religion, national origin, or age")). Ms. Huang's allegations regarding her religion and her marriage to Kuyumcu do not implicate her race or ethnicity and, thus, cannot support a plausible Section 1981 Claim.

Ms. Huang's allegations regarding Defendants' race-based discriminatory intent are too conclusory to survive a motion to dismiss.  She claims that (i) Defendants "routinely engage in a pattern and practice of discriminating against non-Caucasians, who have not themselves, committed any criminal offenses just because of their religious and/or ethnic affiliation to an individual[,]" (ii) "following September 11th, 2001, [she] has learned of several instances where Muslims[] and non-Caucasians have routinely been subjected to racial animus, and deprived of their Civil Rights by Defendants [] in violation of 42 U.S.C. Sec. 1981, by unlawfully placing them in a suspect category[,]" and (iii) Defendants' "selective targeting of [her] for disparate and discriminatory treatment is based wholly on [her] religious affiliation and race, since it is similarly well known that Irish, Italian and Jewish customers having accounts with these Defendants are not denied service simply because a family member was convicted of a criminal offense." (ECF No. 1 at 5 ¶¶ 20–22).  She fails, however, to support these conclusory allegations with facts, and therefore, they do not give rise a plausible inference that Defendants acted with discriminatory animus.  See Iqbal, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim); Oparaji, 2020 WL 9816011, at *15 ("Plaintiff's conclusory statement in her opposition papers that 'persons who [are] not in the protected class were given copies of their promissory note when they signed and executed a note,' with no further factual allegations to support this claim, is not

sufficient to give rise to an inference of discrimination" to support a Section 1981 claim.); Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371–72 (S.D.N.Y. 2005) ("[A] [p]laintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn.").

Absent plausible allegations of discriminatory animus, the mere fact that the Closures occurred "does not, alone, 'giv[e] rise to a plausible inference of racially discriminatory intent[.]'" Oparaji, 2020 WL 9816011, at *15 (quoting Bentley, Jr., 599 F. App'x at 396).  Contrary to her conclusory assertions of racial animus, Ms. Huang "provides a clear motive for the termination of [her] accounts that does not turn on racial animus[,]" Akyar, 2018 WL 4356734, at *5, i.e., "her spouse's federal conviction" (ECF No. 19 at 5), and Amazon's "policy to comply with government sanctions and export regulations."  (ECF No. 1 at 2 ¶ 1; see id. at 1 ¶¶ 4, 5; id. at 10 (Amazon advising Ms. Huang that it was closing her Retail and Seller Accounts pursuant to its "policy to comply with government sanctions and export control regulations" because it had "identified similarities between information in [her] account and an individual with whom [Amazon] can't currently due business.")).  These allegations, which are not accompanied by "specific facts suggesting discriminatory animus[,] contradict[] [Ms. Huang's] claim of racial [or ethnic] discrimination."  Akyar, 2018 WL 4356734, at *5 (finding plaintiff failed to state a Section 1981 Claim where he "assert[ed] that Defendants' decision to close [his] accounts was 'made pursuant to [the DOJ's Operation Choke Point] in order to avoid any future issues with the [DOJ]' which threatened severe sanctions for noncompliance").

Finally, Ms. Huang's suggestion that she will be able to cure her pleading deficiencies with information obtained through discovery is unpersuasive (ECF No. 19 at 7), as "it is axiomatic that

a plaintiff must state a claim <u>before</u> [s]he is entitled to discovery."  <u>Bristol-Myers Squibb Co. v.</u> <u>Matrix Lab'ys Ltd.</u>, No. 12 Civ. 5846 (PAE), 2015 WL 4430614, at *8 (S.D.N.Y. July 20, 2015); <u>see</u> <u>KBL Corp. v. Arnouts</u>, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009) ("[A]llowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to 'streamline[ ] litigation by dispensing with needless discovery and factfinding' where the plaintiff has failed to state a claim under the law.") (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 326–27 (1989)).

Accordingly, because she does not plausibly allege that Defendants intentionally discriminated against her based on her race, Ms. Huang has failed to state a plausible Section 1981 Claim.

### 2.  IIED Claims

To support her IIED Claims, Ms. Huang argues that Defendants acted "with reckless indifference to the likelihood that emotional distress would result" from the Closures. (ECF No. 1 at 6 ¶ 31).  Defendants argue that Ms. Huang's IIED Claims fail because she "fails to allege conduct that satisfies the outrageous character necessary for an [IIED] claim."  (ECF No. 17 at 14; <u>see</u> ECF No. 27 at 13–14).

For the reasons set forth below, the Court agrees with Defendants that Ms. Huang has failed to plausibly allege an IIED claim.

### a.  Legal Standards

"To plead a claim of IIED under New York law, a plaintiff must allege '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury;

and (4) severe emotional distress.'" Truman v. Brown, 434 F. Supp. 3d 100, 117 (S.D.N.Y. 2020)

(quoting Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001)).  "The New York Court of

Appeals has held that these requirements, especially that of extreme and outrageous conduct,

'are rigorous and difficult to satisfy.'"  Id. (quoting Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122

(1993)).  "Liability has been found only where the conduct has been so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious and utterly intolerable in a civilized community." Chanko v. Am. Broadcasting Cos., 27

N.Y.3d 46, 56 (2016) (quoting Howell, 81 N.Y.2d at 121).

### b. **Application**

Ms. Huang has failed to state a plausible IIED Claim.  She claims that Defendants

terminated her Credit Card and closed her Retail and Seller Accounts "due to [Kuyumcu]'s

conviction" and pursuant to their policy "to comply with government sanctions and export

regulations." (ECF No. 1 at 2, 4 ¶¶ 1, 17).  Ms. Huang concedes that Kuyumcu was convicted of

exporting materials to Iran, and does not dispute the validity of Defendants' policy to comply

with government sanctions and export regulations, nor does she allege that Defendants

fabricated the policy solely to target her.  (Id. at 4 ¶ 15).  While she claims that Defendants "do

not close accounts of Caucasians whose spouse is convicted of crime," (ECF No. 21 at 4 ¶ 24), she

fails to substantiate that assertion with any factual allegations.  (See § III.C.1.b., supra).

Considering the Complaint as well as the Oppositions, the Court finds that Ms. Huang has failed

to allege that Defendants' behavior was "so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized community." Chanko, 27 N.Y.3d at 56; see Calizaire v. Mortg. Elec.

<u>Registration Sys., Inc.</u>, No. 14-CV-1542 (CBA) (SMG), 2017 WL 895741, at *8 (E.D.N.Y. Mar. 6, 2017) ("[Plaintiff]'s complaint, in essence, is that Deutsch[e] Bank has knowingly initiated foreclosure proceedings without the right to do so. This does not constitute the 'outrageous conduct' necessary to support an IIED claim."), <u>aff'd</u>, 763 F. App'x 124 (2d Cir. 2019); <u>cf.</u> <u>Perry v. Burger King Corp.</u>, 924 F. Supp. 548, 553 (S.D.N.Y. 1996) ("Overt acts of discrimination have generally not been found to rise to the level of intentional infliction of emotional distress.").

\*     \*     \*

Accordingly, the Court respectfully recommends that Ms. Huang's Section 1981 Claims and IIED Claims be DISMISSED for failure to state a claim.

**D.  <u>Leave to Amend</u>**

The Federal Rules of Civil Procedure provide that a court "should freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities."  <u>Monahan v. N.Y.C. Dep't of Corr.</u>, 214 F.3d 275, 283 (2d Cir. 2000) ("Rule [15] reflects two of the most important principles behind the Federal Rules:  pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, and 'mere technicalities' should not prevent cases from being decided on the merits.").  Courts "ordinarily recommend that a <u>pro se</u> plaintiff be given leave to amend his complaint to replead all factually insufficient claims."  <u>Huggins v. Schriro</u>, No. 14 Civ. 6468 (GBD) (JLC), 2015 WL 7345750, at *9 (S.D.N.Y. Nov. 19, 2015); <u>see</u> <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] <u>pro se</u> complaint generally should not be dismissed without granting the plaintiff leave to amend at least once[.]").

Courts in this District have held that denial of a motion to amend is appropriate where "(1) the movant is guilty of undue delay, (2) the movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party." Procter & Gamble Co. v. Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see also Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (referencing Supreme Court precedent that proper grounds for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment") (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  "[I]t is settled that a motion to amend should be denied on grounds of futility where it would have to be dismissed on statute of limitations grounds." Dilworth v. Goldberg, No. 10 Civ. 2224 (JMF) (GWG), 2013 WL 5745989, at *2 (S.D.N.Y. Oct. 23, 2013) (collecting cases); see Awan v. United States, No. 16 Civ. 871 (CBA) (VMS), 2020 WL 1172634, at *9 (E.D.N.Y. Feb. 3, 2020), adopted by, 2020 WL 1166448 (E.D.N.Y. Mar. 11, 2020).

Given Ms. Huang's pro se status, the Court respectfully recommends that her Request for leave to amend be GRANTED as those claims the Court has found solely to be inadequately pled, i.e., her Section 1981 Claim against Amazon based on the Dec. 2018 Closure, and DENIED as to those claims that the Court has found to be untimely, i.e., her Section 1981 Claims based on the April 2018 Closure and her IIED Claims.  As to the latter, "[t]he defects in these claims are not the result of 'inadequate[] or inartful[]' pleading, and are not susceptible to cure." Trujillo, 2016 WL 10703308, at *21 (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).  Therefore, amendment of these claims would be futile. See, e.g., Klein v. Zugabie, No. 15 Civ. 9093 (NSR),

2017 WL 374733, at *10 (S.D.N.Y. Jan. 24, 2017) ("[A]s most of Plaintiff's claims are 'untimely as a matter of law, repleading [those claims] would be futile.'") (quoting Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 452 (S.D.N.Y. 2014)); Kotler v. Charming Shoppes, Inc., No. 11 Civ. 3296 (SAS), 2012 WL 291512, at *3 (S.D.N.Y. Jan. 31, 2012) ("[L]eave to replead would be futile because [plaintiff's] claims are time barred and an amended complaint would be unable to cure that deficiency."); Keitt v. New York City, 882 F. Supp. 2d 412, 426 (S.D.N.Y. Sept. 29, 2011) ("All of [plaintiff's] claims against the City Defendants are time-barred and thus an amendment with respect to these claims would be futile.").

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend that the Motions be GRANTED, that Ms. Huang's Section 1981 Claims based on the April 2018 Closure and her IIED Claims (i.e., all claims against Chase) be DISMISSED WITH PREJUDICE as time-barred, and her Section 1981 Claim against Amazon based on the Dec. 2018 Closure be DISMISSED WITHOUT PREJUDICE and with leave to amend.

Dated:       New York, New York
             January 31, 2023

                              SO ORDERED

                              _____
                              **SARAH L. CAVE**
                              **United States Magistrate Judge**

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  <u>See also</u> Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Rochon.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  If Ms. Huang does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, she may request copies from Defendants' counsel.  <u>See</u> Local Civ. R. 7.2.